UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
MARTIN JUAREZ, individually and on    :
behalf of others similarly situated,  :        13cv261(DLC)
                                      :
                 Plaintiff,           :        OPINION & ORDER
                                      :
        -v-                           :
                                      :
WHEELS PIZZA INC., (d/b/a ANNA MARIA'S :
PIZZA) and ANN MARIE DELANEY,         :
                                      :
                 Defendants.          :
                                      :
------------------------------------- X

APPEARANCES:

For Plaintiff Martin Juarez:
Joshua S. Androphy
Michael Antonio Faillace
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 2020
New York, NY 10165

For Defendants Wheels Pizza Inc. and Ann Marie Delaney:
Bradley Lawrence Waldman
O'DWYER & BERNSTEIN, L.L.P.
52 Duane Street
New York, NY 10007

DENISE COTE, District Judge:

      Plaintiff Martin Juarez ("Juarez" or "plaintiff") brings

various claims under the Fair Labor Standards Act ("FLSA") and

the New York Labor Law ("NYLL") against his former employer,

Wheels Pizza Inc. ("Wheels")[1], and Ann Marie Delaney ("Delaney,"

---

[1] Wheels Pizza operated "Anna Marie's Pizza" during the time at
issue.  All references to "Wheels" with respect to that time
refer to Anna Marie's Pizza.

collectively "defendants"), the daughter of Wheels's late owner.
Defendants now move for summary judgment on all claims.  For the
reasons stated below, the motion is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted.
From summer 2008 to October 2012, Wheels operated a cash-only
pizza stand at Manhattan's South Street Seaport.  Business was
seasonal, and the stand employed from four to eight employees at
any one time.  Wheels's sole owner and shareholder was Austin
Delaney, who died in May 2009.  Before Austin Delaney's death,
the stand was managed by Joseph Oliva ("Oliva"), who was in
charge of hiring, firing, setting schedules for, and
distributing pay to employees.  During this time Oliva consulted
with Austin Delaney regarding firing decisions, and Austin
Delaney also prepared pay for Oliva to distribute.  The parties
dispute whether and to what degree Oliva continued to manage the
stand after Austin Delaney's death.  In October 2012, Superstorm
Sandy forced the stand to close, and it never reopened.

Juarez was hired by Oliva when Wheels opened the pizza
stand in 2008 and worked there until it closed in October 2012.
Juarez claims to have worked 8:00 a.m. to 9:00 p.m. six days a
week, occasionally staying past 9:00 p.m.  The parties agree his
primary responsibility was preparing pizzas and working the

counters.  Juarez contends he was responsible for cleaning the stand, as well.  He was paid partly by check and partly in cash. He states that until January 2012 he received $250 by check every week and $200 in cash every other week; in January 2012, he states, he began receiving $15/hour.

On January 1, 2013, Juarez commenced this action pursuant to 29 U.S.C. § 216(b), alleging violation of the FLSA's minimum wage and overtime provisions, the analogous provisions of the NYLL, and a relevant state regulation.[2]  Defendants filed the instant motion for summary judgment on April 3, 2015; it was fully submitted on May 15.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact" and that defendants, the movants, "[are] entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  Defendants bear the burden of demonstrating the absence of a material factual question, and, in making this determination, all facts are viewed in the light most favorable to Juarez and all reasonable inferences are drawn

---

[2] This case was originally assigned to the Honorable Robert P. Patterson.  Following the reassignment to this Court, the plaintiff indicated at a February 20, 2015 conference that he was bringing this action on his own behalf alone and was not pursuing either a collective or class action.

in Juarez's favor.  See Eastman Kodak Co. v. Image Technical

Servs., 504 U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521

F.3d 130, 132 (2d Cir. 2008).

Defendants advance four principal arguments.  First, they

argue that Wheels did not have a sufficient amount of gross

revenue to be covered by the FLSA.  Second, they argue that

Delaney cannot be liable because she was never Juarez's

employer, as that term is used in the relevant statutes.  Third,

they argue that Juarez's testimony is "not credible as a matter

of law."  Finally, they argue that Juarez's claims fail because

he cannot establish damages.  Each argument will be addressed in

turn.

I. Enterprise Test

The FLSA defines an "enterprise engaged in commerce" as a

business that (1) has employees "engaged in commerce or in the

production of goods for commerce, or that has employees

handling, selling, or otherwise working on goods or materials

that have been moved in or produced for commerce by any person,"

and (2) has an annual gross revenue of at least $500,000.  29

U.S.C. § 203(s)(1)(A)(i), (ii).  Defendants contend that Wheels

has never had annual gross revenue of at least $500,000 and

therefore cannot be liable under the FLSA.[3]

---

[3] Defendants also assert that the FLSA does not apply to Juarez

4

In support of this contention, Wheels offers the first page of each of its corporate tax returns for the years 2008 through 2012.[4]  The largest amount of gross income reported on these tax returns is $432,662, for the year 2011.  The returns are unsigned.  Accompanying these pages is a March 3, 2015 letter from Joel Zipper ("Zipper"), a certified public accountant at the accounting firm of Josephson Luxenberg Kance & Dolinger, PC. Zipper states that the pages submitted are true and accurate copies of the returns filed with the IRS.

Plaintiffs offer Juarez's estimates that the stand's daily sales were $2,500 to $3,500, depending on the day of the week. Assuming these daily totals to be correct, Wheels's annual sales would have been well over $500,000.  Since what is at issue is the actual revenue and not simply the reported revenue, there is

---

because "the pizza business was not engaged in interstate commerce."  Juarez's complaint alleges that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York," and his deposition testimony describes the sale at the stand of, inter alia, soft drinks and beer.  It is logical to infer that these and other goods moved in interstate commerce, which is sufficient to satisfy this requirement.  See, e.g., Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 99 (2d Cir. 2009) ("[The interstate commerce] requirement is rarely difficult to establish . . . because it is met by showing that two or more employees have handled materials that have been moved in commerce.") (citation omitted).

[4] Given the FLSA's three-year statute of limitations, only those returns from 2010, 2011, and 2012 are relevant here.

a genuine dispute of material fact over whether Wheels is a
statutory "enterprise."

II. Liability of Delaney

The FLSA defines "employer" as "any person acting directly
or indirectly in the interest of an employer in relation to an
employee."  29 U.S.C. § 203(d).  "The Court has instructed that
the determination of whether an employer-employee relationship
exists for purposes of the FLSA should be grounded in economic
reality rather than technical concepts."  Irizarry v.
Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (citation
omitted), cert. denied, 134 S. Ct. 1516 (2014).  Accordingly,
the Second Circuit has

> established four factors to determine the "economic
> reality" of an employment relationship: whether the
> alleged employer (1) had the power to hire and fire
> the employees, (2) supervised and controlled employee
> work schedules or conditions of employment, (3)
> determined the rate and method of payment, and (4)
> maintained employment records.

Id. at 104-05 (citation omitted).  "The 'economic reality' test
applies equally to whether workers are employees and to whether
managers or owners are employers."  Id., 722 F.3d at 103.  Where
individual liability under FLSA is concerned, the "overarching
concern [is] whether the alleged employer possessed the power to
control the workers in question."  Id. at 105 (citation
omitted).  "A person exercises operational control over

employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  <u>Id.</u> at 110.

The NYLL, in turn, defines "employer" as "any person ... employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. Law. §§ 190(3), 651(6).  Whether "the tests for 'employer' status are the same under the FLSA and the NYLL . . . has not been answered by the New York Court of Appeals." <u>Irizarry</u>, 722 F.3d at 117.

Defendants contend that Delaney is not a proper defendant under the FLSA and the NYLL because she is not an "owner" of Wheels and had no "operational control" over Wheels.  Both Delaney and Oliva testified that Delaney had no involvement with hiring, firing, or supervising Wheels employees at any time, and indeed that she had no substantial involvement with Wheels at all.

According to Juarez, Delaney was, in fact, involved in setting his pay rate and approved the hiring of new employees. Moreover, plaintiff submits a database maintained by the New York Department of State Division of Corporations that lists Delaney as the Chief Executive Officer of Wheels, something she is unable to explain.  Juarez's assertions suffice to make

Delaney's role with respect to Wheels and Juarez a genuine dispute of material fact.

III. Juarez's Testimony

Although they challenge Juarez's testimony with respect to their other arguments, defendants argue separately that summary judgment is appropriate because his testimony as a whole is not credible. "While it is undoubtedly the duty of district courts not to weigh the credibility of the parties" on summary judgment,

> [I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted).  "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the [plaintiff's] factual allegations and dismiss the claim."  Id. at 555 (citation omitted).

Defendants contend that Juarez's reports of how much pizza he made, how many hours he worked, and how much work he did at Wheels simply cannot be believed.  They also point to instances where, they allege, "plaintiff contradicted his testimony, under

egregious, objectionable leading question[s] by his own attorney."[5]  While it is true that corroborating evidence is lacking for many of Juarez's claims and that some of them strain credulity, the alleged inconsistencies and what defendants characterize as "ludicrous" statements do not cast on his claims the degree of doubt necessary to justify summary judgment on the issue of credibility alone.  The determination of Juarez's credibility will be left to the fact-finder.

IV. Establishing Damages

     Defendants finally argue that they are entitled to summary judgment because Juarez lacks any documentation of the hours he worked and the amounts paid him, and therefore any damages due to him cannot be determined.  Defendants concede, however, that they do not have any such records, either.  "[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citation omitted).  "[A]n

---

[5] Specifically, defendants say that Juarez first testified to receiving cash payments of $200 per week, then later testified to receiving such payments every other week after, "[d]uring the break . . . counsel conferred with [him] . . . outside the deposition room."  Defendants also note that Juarez did not mention Delaney the first time he was asked about his supervision at work.

employee's burden in this regard is not high," and "it is possible for a plaintiff to meet this burden through estimates based on his own recollection."  Id.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

Juarez has offered his estimates of the hours he worked and the pay he received.  In the absence of adequate and accurate records maintained by Wheels, this is sufficient to satisfy the low burden imposed on FLSA plaintiffs on this issue. Defendants, meanwhile, have offered Oliva's own recollections of the amount and extent of the work performed by Juarez.  As with the other issues on which defendants seek summary judgment, the appropriate amount of damages is ultimately a question for the fact-finder.

**CONCLUSION**

Defendants' April 3, 2015 motion for summary judgment is denied.


Dated:     New York, New York
           June 30, 2015

                                    _____
                                    DENISE COTE
                         United States District Judge